UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

INTRA MANAGEMENT SOLUTIONS,
INC.,
     Plaintiff

v.

ERIC SCHNAIRSOHN,
     Defendant
_____/

## COMPLAINT

COMES NOW, Plaintiff, INTRA MANAGEMENT SOLUTIONS, INC., ("IMS")

files its Complaint against Defendant, ERIC SCHNAIRSOHN ("SCHNAIRSOHN")

and alleges as follows:

### I.     JURISDICTION, PARTIES, AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 18

U.S.C. § 1332(a)(1) in that this is a civil action for damages in excess of $75,000.00,

exclusive of interest and costs, and the parties are citizens of different states.

2.     Plaintiff, INTRA MANAGEMENT SOLUTIONS, INC., a Texas for-profit

corporation, provides project management and consulting services with its principal

place of business located at 6136 Frisco Square Blvd, Suite 400 Frisco, TX 75034.

3.     Defendant, ERIC SCHNAIRSOHN, is *sui juris* and is a resident of this

Court's jurisdiction.

4.      SCHNAIRSOHN was employed by IMS while residing in Broward County, Florida.

5.      Matt Wojciechowski ("Wojciechowski") is the President and Founder of IMS.

## II.      RELEVANT PRIOR MATTERS

### *Undisclosed Criminal History*

6.      Before IMS hired SCHNAIRSOHN, and unbeknownst to IMS, he had an extensive history of criminality, harassment, deceit, extortion and immorality, which he failed to disclose or otherwise notify IMS.

7.      On February 8, 2017, in Portland, Maine, SCHNAIRSOHN was arrested and charged with Theft By Deception, a Class B Felony in the State of Maine. A true and correct copy of Defendant's Maine Criminal History Record is attached hereto as Exhibit "A".

8.      On June 11, 2017, SCHNAIRSOHN was found guilty and sentenced to two (2) years' incarceration and two (2) years of probation. *See* Exhibit "A."

9.      On May 19, 2018, SCHNAIRSOHN was arrested in Massachusetts and charged with the offense of Fugitive From Justice Without a Warrant, and was dismissed on June 19, 2018. A copy of Defendant's Massachusetts Criminal Docket is attached hereto as Exhibit "B".

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107  | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

10.     On December 29, 2009, the Commonwealth of Massachusetts charged SCHNAIRSOHN with violating an Abuse Prevention Order, which was disposed of on June 18, 2010.  SCHNAIRSOHN also was issued two charges for Unauthorized Access to a Computer System, which was disposed of on March 13, 2014. A copy of the screenshot of the Massachusetts Charges are attached hereto as Exhibit "C".

11.     Furthermore, IMS filed a police report based on the SCHNAIRSOHN's threatening and extortionary language, which will be detailed in the *infra*.

### *Prior Injunctions of SCHNAIRSOHN for Threats Against Attorney and Ex-Wife*

12.     On October 6, 2008, Elizabeth Schnairsohn, ex-wife of Defendant SCHNAIRSOHN, filed a Complaint for Divorce in the Probate and Family Court Department of the Commonwealth of Massachusetts, Docket No. 08D-3429-DVI.

13.     On October 27, 2009, the Honorable Peter C. DiGangi of the Commonwealth of Massachusetts issued an Order on Judgement of Divorce (hereinafter the "Order"). A true and correct copy of the Order is attached as Exhibit "D".  SCHNAIRSOHN's divorce action is highly relevant here, because the Court determined that SCHNAIRSOHN committed perjury, falsified documents, and implemented a similar campaign of harassment and deceit in that matter (and its aftermath).  SCHNAIRSOHN's conduct prompted the Judge to not only hold him in contempt, but to also take the extraordinary act of issuing a warning to other courts before which SCHNAIRSOHN may appear:

3

"...**although this is unusual, the Court cautions other forums before which Husband [SCHNAIRSOHN] appears that he lacks credibility entirely**."

*See* Order, Exhibit "D" p. 13 (emphasis added).

14.     In Paragraph 25 of the Order, the Court made the following finding:

"In light of Husband's **willfully false testimony and presentation of evidence to this Court**, it is appropriate that Husband be assessed sanctions in the amount of $5,000.00 payable to the Middlesex Probate and Family Court c/o Chuck Shepherd, Rm. 38."

*See* Exhibit "D". (emphasis added).

15.     In Paragraph 18 of the Order, the Court further found SCHNAIRSOHN's

financial statements as incredulous, stating that:

"[SCHNAIRSOHN's] admissions that his previously **filed financial statements** were based on the 2007 tax returns that **he knew to be incorrect** and that he failed to review pertinent bank or business records in preparing the statements."

*See* Exhibit D. (emphasis added).

16.     SCHNAIRSOHN has also demonstrated violent behavior towards his ex-

wife as set forth in Paragraph 39 of the Order, the Court stated:

"Wife testified to several incidences of violent or physical conduct exhibited by Husband both before and after the birth of their child. For example, before the child's birth there were more mild incidences such as Husband throwing the television remote at Wife. However, after the birth of their child, Husband's conduct worsened. In the winter of 2007, Husband became upset and threw his computer, keyboard, and monitor off of his desk and proceeded to punch a hole in both doors of his home office. Wife also testified to another incident, which occurred a month prior to the parties' separation. Wife explained that she was playing with the child in his room when Husband came in and began to upset the child. After Wife pointed out this behavior to Husband, he threw a toy dump truck filled with blocks across the room. Husband then kicked a glass of

4

wine that was sitting within inches from the child. Husband has also been abusive to the parties' dog throughout the marriage."
*See* Exhibit "D".

17.     In the following Paragraph, the Court also found:

"Husband has **a pattern of badgering Wife with emails**-sometimes sending as **many as thirty five (35)** emails per day-on issues unrelated to the parties' child. Said emails **frequently contain threats and slanderous statements against both Wife and her family**."
*See* Exhibit "D". (emphasis added).

18.     Moreover, the Court found that:

[SCHNAIRSOHN ] carried on extramarital affairs with at least two (2) women during the parties' marriage. One was an employee with whom he traveled frequently. The other was the nanny for the parties' child.
*See* Exhibit "D".

19.     The Order continued to admonish SCHNAIRSOHN's dishonesty,

finding:

"The Court also considers that Husband's unemployment claim conveniently coincides with this trial and that his aggregate income and business supports an attribution of income. See, e.g. *Croak v. Bergeron*, 67 Mass. App. Ct. 750, 752 (2006). Lastly, Husband's lack of honesty in reporting his income essentially leaves this Court with no recourse but to impute income from his tax returns and bank records."
*See* Exhibit "D".

20.     Most importantly, the Court made sure to conclude the Order by

reiterating the dishonesty and immorality that SCHNAIRSOHN exhibited, stating:

"As a final matter, although this is unusual, **the Court cautions other forums before which Husband appears that he lacks credibility entirely**. The Court refers to Husband's knowing filing of false financial statements using not only outdated figures, but figures drawn from a tax return which he knew to be incorrect. **Despite taking an oath, Husband also**

**knowingly presented false testimony to this Court regarding his business practices and involvement in extramarital affairs**. In other words, this Court found both Husband's financial statements and testimony to be highly incredible. **Not only was Husband entirely unreliable, but his failure to tell the truth while under oath constitutes perjury**. See, e.g. *Croak v. Bergeron*, 67 Mass. App. Ct. 750, 752 (2006). Lastly, Husband's lack of honesty in reporting his income essentially leaves this Court with no recourse but to impute income from his tax returns and bank records. The Court finds **clear and convincing evidence that Husband willfully gave false testimony and presented false evidence to this Court that he knew to be perjurious**. Therefore, it is appropriate that Husband be assessed sanctions in the amount of $5,000.00 attributable to the general fund of the Commonwealth of Massachusetts."

*See* Exhibit D (emphasis added).

23.   The Court issued a Contempt Order on February 17, 2010 (the "Contempt Order") against SCHNAIRSOHN which stated that "[SCHNAIRSOHN] is **ordered not to contact or communicate with [ex-wife's] employer or clientele**. Violation hereof will result in a criminal complaint for contempt to be issued." A true and correct copy of the Contempt Order is attached hereto Exhibit "E". (emphasis added)

24.   Following his divorce, SCHNAIRSOHN continued to engage in a terror campaign of harassment against his ex-wife, her family, her attorney, her employer and at least one witness.  As set forth in an Opposition to SCHNAIRSOHN's Motion for Temporary Orders, following the divorce SCHNAIRSOHN:

(a)  began contacting the managing partners of [ex-wife's law firm Goulston & Storrs, in an effort to get her fired;
(b)  contacted the IRS and DOR against [ex-wife] and her parents, accusing them of tax fraud;
(c)  reported [ex-wife] to the BBO [Better Business Bureau];
(d)  contacted the FBI against [ex-wife];

(e) contacted the Attorney General's office against [ex-wife];

(f) contacted Massachusetts Lawyer's Weekly and the Boston Herald;

(g) accused [ex-wife] of "credit card fraud" and reported her to the police and to the District Attorney's Office;

(h) reported [ex-wife]'s parents to the Better Business Bureau, the Banking Commissioner and the Real Estate Appraisal Board;[1]

(i) reported a witness who testified against him to the IRS, DOR and Attorney General; and

(j) attempted to get a restraining order against Ms. Levine's counsel.

*See* Exhibit F (listing SCHNAIRSOHN's harassing behavior).

### *Extortion of Former Employer*:

23.     On October 2022, SCHNAIRSOHN's former employer ClearPlan LLC ("ClearPlan") disclosed his extortion attempts in an action involving third parties, filed in the Superior Court of Massachusetts, Case No.: 2281cv03614.  A copy of ClearPlan's Memorandum of Law in Support is attached hereto as Exhibit "G".

24.      Similar to the actions taken by SCHNAIRSOHN in this instant Action, ClearPlan's brief reveals:

> Specifically, ClearPlan informed Defendants that their security clearance allegations seemed similar to frivolous accusations made by a former ClearPlan employee named Eric Schnairsohn, who had advanced such allegations as part of an effort to extort a lucrative severance package from ClearPlan after he was terminated for, among other things, submitting fraudulent invoices to the company for reimbursement.

*See* Exhibit "G".[2]

---

[1] Although SCHNAIRSOHN reported other individuals to the Real Estate Appraisal board, *his* appraisal license was "Surrendered by Discipline".  *See* Exhibit "H"

25.     SCHNAIRSOHN is now implementing a similar campaign harassment and attempted extortion against IMS, its employees and clients.

### III.     GENERAL ALLEGATIONS

*Employment*

26.     SCHNAIRSOHN worked for IMS from January 1, 2021 up until approximately July 18, 2024.

27.     The close of SCHNAIRSOHN's tenure with IMS was marred with unethical and immoral behavior.

28.     IMS received harassment complaints from other employees regarding SCHNAIRSOHN's actions towards these employees. These include reports that SCHNAIRSOHN made sexually harassing comments.

29.     Furthermore, IMS learned of several false representations contained in specific expense reports submitted by SCHNAIRSOHN for reimbursement by IMS. The expense reports indicated that participants were present at events, while those participants were not present and were at different geographic locations.

30.     Following an appropriate investigation under the circumstances, IMS had reasonable grounds to believe that SCHNAIRSOHN made false representations in the expense reports at issue.

31.     IMS has also learned that SCHNAIRSOHN recently improperly appropriated IMS information and multiple documents by forwarding them to a personal email address.

32.     On July 2, 2024, SCHNAIRSOHN purported to tender his resignation to IMS, but he retracted that decision shortly thereafter.

33.     The situation got so tenuous that IMS had no choice but to terminate SCHNAIRSOHN, during a virtual meeting on July 18, 2024.

34.     On that same day, IMS sent SCHNAIRSOHN a letter formally terminating their employment relationship. A true and correct copy of the Termination Letter is attached as Exhibit "I".

### _Post-Employment Defamation, Harassment, Suborning Perjury, and Tortious Interference_

### Tortious Interference With Existing Employees

35.     As of the filing of this Complaint, at least one new hire has retracted their job acceptance with IMS.

36.     Upon information and belief, SCHNAIRSOHN contacted that new hire and provided that person with false and defamatory statements about IMS, its President and its employees.

### Tortious Interference With Existing Clients

37.     SCHNAIRSOHN has contacted IMS' clients Sierra Space Corp. ("Sierra Space"), Lawrence Livermore National Laboratory ("Livermore"), Millenium Space

Systems, a Boeing Company ("Millenium Space Systems"), and Iridium and is spreading these false accusations of drug use by Wojciechowski and sexual harassment by an employee, Michael Boyd ("Boyd").

38.     SCHNAIRSOHN threatened to spread malicious and patently false statements about IMS to these clients, IMS' competitors, and more, stating that "every employee at IMS and now ClearPlan and now every client has been told that [IMS employee Michael Boyd] is a sexual predator and [IMS employee] Demi is a racist – and you are employing such, good luck with that." *See* Exhibit "J".

39.     SCHNAIRSOHN also mentioned that he spoke to Iridium and that Sierra Space was notified of the false allegation that Michael Boyd was suspended. *See* Exhibit "K".

40.     These false statements that IMS's President and employees committed drug trafficking crimes and sexual harassment that SCHNAIRSOHN has made and continues to make to IMS' existing clients are engineered to cause a breakdown in IMS' business relationship with those clients.

**Defamation Per Se: Employees**

41.     On July 18, 2024, shortly after SCHNAIRSOHN received formal notice of IMS' intention to terminate their employment relationship, SCHNAIRSOHN began his string of intimidating, extortionary, and threatening language and conduct.

Cadogan Law | 300 S. Pine Island Road, Suite 107 | Plantation, FL 33324 | T: 954.606.5891 | www.cadoganlaw.com

42.     That same day, SCHNAIRSOHN e-mailed IMS' counsel the following

defamatory statements in an effort to extort IMS:

> I will be filing a wrongful termination suit against Matt and Lori and IMS
> along with other actions based on the following.
> Matt has asked me multiple times to supply illegal prescription drugs to
> his wife (Xanex) through delivery to Matt directly, last week in Augusta,
> GA and 2 months ago via a third party, Eric Lajeunesse in CO. Matt knew
> my doctor prescribed me Xanax and directed me to provide him such
> drugs for his wife's personal use, to which I did.  I have evidence of such
> re video last week in Augusta GA of Matt taking a 30-count bottle of
> Xanax from me for his wife's personal use and via testimony of Eric
> Lajeunesse to which he delivered to Matt a bottle of 60 count for his wife's
> personal use.
> I will be reporting this illegal drug use and receipt to the Department of
> Defense, Department of Energy, all of Intra's clients as well as its current
> employees and Intra FSO.
>
> I have drafted a 3-year severance agreement that would indemnify Matt
> and Intra Management from all such claims as well as any other actions
> that would satisfy both parties if acceptable.  Short of attached severance
> agreement, all claims will be reported and substantiated with undeniable
> proof.

A true and correct copy of the July 18, 2024 e-mail from SCHNAIRSOHN is
attached hereto as Exhibit "L"

43.     SCHNAIRSOHN committed extortion by threatening to take these

actions unless IMS paid him over $1 million through his purported severance

agreement.

44.     SCHNAIRSOHN continued a pattern and practice of intimidating,

threatening, coercing, and blackmailing IMS and its employees via text message

shortly after he was terminated.

45.     SCHNAIRSOHN contacted Wojciechowski via text, threatening to wrongfully report him and IMS to the authorities for allegedly retrieving Xanax from SCHNAIRSOHN, coercively stating that "you can still stop this – just call me and we can fix all of this…. I can remove legal and authorities immediately". *See* Exhibit "M".

46.     SCHNAIRSOHN further threatened to slander IMS' reputation to its clients, including Millenium Space Systems, giving Wojciechowski a deadline of 5 PM EST that day to respond to SCHNAIRSOHN or else he would "respond" to Millenium Space Systems. *See* Exhibit "N".

47.     SCHNAIRSOHN continued to threaten to spread malicious and patently false statements about IMS to other clients, including Livermore and Sierra Space, while also stating that "every employee at IMS and now [Security Clearance Contractor] ClearPlan and now every client has been told that [IMS employee Michael Boyd] is a sexual predator and [IMS employee] Demi is a racist – and you are employing such, good luck with that." SCHNAIRSOHN further continued to threaten to slander Boyd  with false allegations of sexual harassment. *See* Exhibit "J".

48.     In furtherance of his concocted scheme to slander IMS and its employee, Boyd, SCHNAIRSOHN attempted to coerce other IMS employees to report Boyd for sexual harassment, unless IMS terminated him.

49.     Even after SCHNAIRSOHN was fired from IMS, he continued to misrepresent that he was still employed by IMS and refused to remove such title from

his LinkedIn profile, going as far as disputing the request with LinkedIn and refusing to remove it until the parties "settle". *See* Exhibit "O".

50.    In fact, SCHNAIRSOHN used LinkedIn to defame IMS' reputation by indicating that IMS employees:

(a)    used racial slurs towards African Americans;

(b)    that its CEO receives illegal drugs that were trafficked;

(c)    that IMS was being investigated for drug trafficking, distribution, stalking; and

(d)     sexual harassment.

*See* Composite Exhibit "P".

51.    SCHNAIRSOHN continued to propagate the malicious lies, posting:

[CEO Lori Findley Wojciechowski] just liked this post but is employing this person and allowing him to get away with stalking and sexually harassing female co-workers with no repercussions?"
"I know everyone has been asking me about Michael Boyd and what's going with this stalking and sexual harassment investigation – DM me and I will provide further details and proof – be aware his employer – FSO and all his clients and PMs have been notified and aware of any precautions that need to be taken now."
"Anyone looking for info before considering joining Intra Management Solutions please contact me for info. Please please contact me before considering joining them – I have information you want to see prior".
*See* Composite Exhibit "Q".

52.    Furthermore, SCHNAIRSOHN also purported to take questions and comments from individuals with interest in IMS and posted responses on LinkedIn:

"Be careful company has lots of legal issues including potential drug trafficking and distribution by its President and its CEO as well as stalking and sexual harassment by its CA site leader"

"More Intra Management Solutions employee questions: Eric – if Michal Boyd is under review and suspension for cyber stalking, sexual harassment, and using racial terms referring to people of color, how is he still employed by IMS? Please explain… He obviously has issues with women and people of color…"

"Another IMS Candidate feedback – I was leaning away from the role before all that. Just not the best fit for me and after speaking with Demi Miret Boyd and hearing about the claims of her racism and unprofessionalism, I decided to retract my acceptance and join ClearPlan instead."

*See* Composite Exhibit "R".

53.     SCHNAIRSOHN followed these LinkedIn post screenshots with blackmail-laced texts to Wojciechowski, including:

(a)     "Not going to be easy to get talent or clients when they see police reports and drug charges along with you employing a stalker sexual harassment employee and his racist wife";

(b)     "I can keep doing this forever, you can stop all of this with one phone call to me"; and

(c)     "all your employees are reaching out to me petrified of being associated with a company with drug ties – I will post police reports next whereas they are public record".

*See* Exhibit "S".

54.     The blatant lies did not stop there – SCHNAIRSOHN texted another IMS employee who is African American, and falsely stated, with no evidence whatsoever

14

that Michael Boyd's wife—also an IMS employee- made a comment about his first

name being a "jungle name". *See* Exhibit "T".

55.     Other IMS employees contacted IMS leadership, including

Wojciechowski, informing them of the texts they had received from SCHNAIRSOHN

regarding the patently false allegations of drug use by Wojciechowski and sexual

harassment by Boyd. *See* Exhibit "Q".

56.     SCHNAIRSOHN further extorted Michael Boyd by texting him:

"You have until 10pm tonight to return my money or I will start posting pics of you and Demi on the LinkedIn with titles of Sexual Predator and Racist."
*See* Exhibit "R".

57.     In just a few short days, these malicious and defamatory actions by

SCHNAIRSOHN has carried with it dire consequences.

## Suborning Perjury

58.     Upon information and belief, SCHNAIRSOHN has contacted former and

existing employees of IMS to attempt to convince them to lie about IMS and claim that

IMS and its employees violated laws.

59.     Upon information and belief, it is SCHNAIRSOHN who harassed  former

and/or existing employees.

## *Misappropriation of IMS' confidential, proprietary business information*

60.     After IMS fired SCHNAIRSOHN, it discovered that he sent client

résumés to his wife's email address.

61.     These résumés are not in the public domain and were confidential to

IMS.

62.     Since IMS provides staffing to federal contractors, such résumés are

integral to its business model and are viewed as proprietary business information.

### *Damages and Irreparable Harm*

63.     The reputational damage to IMS is incalculable considering that

SCHNAIRSOHN continues to publicly post malicious remarks on LinkedIn for the

public to see (while pretending to still be part of IMS and therefore speaking on its

behalf), and continues to make defamatory statements regarding IMS, its President and

its employees.

64.     Therefore, IMS has suffered and will continue to suffer damages due to

the malicious and depraved behavior of SCHNAIRSOHN.

### IV.     CONDITIONS PRECEDENT

65.     All conditions precedent have been satisfied or been waived.

### V.     ATTORNEYS' FEES

66.     IMS has retained the undersigned law firm and has agreed to pay its

reasonable attorneys' fees.

### COUNT I: DEFAMATION PER SE AND PER QUOD

67.     IMS incorporates and realleges paragraphs 1-66 above as if fully set forth

herein.

68.     On or about July 18, 2024 and continuing thereafter, SCHNAIRSOHN intentionally published numerous false and defamatory statements about IMS and its employees to third parties, including publicly on LinkedIn, to clients, and to current employees of IMS.

69.     SCHNAIRSOHN stated "I will be reporting this illegal drug use and receipt to the Department of Defense, Department of Energy, all of Intra's clients as well as its current employees and Intra FSO".

70.     SCHNAIRSOHN threatened to slander IMS' reputation to its clients, including Millenium Space Systems, giving Wojciechowski a deadline of 5 PM EST that day to pay SCHNAIRSOHN over $1 million or he would "respond" to Millenium Space Systems.

71.     In addition to Millennium Space Systems (a Boeing company), SCHNAIRSOHN admitted that he spread these vicious and false statements to clients of IMS, Livermore and Sierra Space, as well as to "every employee at IMS and now ClearPlan and now every client has been told that Michael Boyd is a sexual predator and [IMS employee and Boyd's wife] Demi is a racist – and you are employing such, good luck with that."

72.     SCHNAIRSOHN has placed posts on LinkedIn to defame IMS' reputation by indicating that:

        (a) IMS employees used racial slurs towards African Americans;

(b) that its CEO receives illegal drugs that were trafficked;

(c) that IMS was being investigated for drug trafficking, distribution, stalking;

(d) and sexual harassment.

73.     SCHNAIRSOHN followed up these LinkedIn post screenshots with blackmail-laced texts to Wojciechowski, including "Not going to be easy to get talent or clients when they see police reports and drug charges along with you employing a stalker sexual harassment employee and his racist wife", "I can keep doing this forever, you can stop all of this with one phone call to me", and "all your employees are reaching out to me petrified of being associated with a company with drug ties – I will post police reports next whereas they are public record".

74.     SCHNAIRSOHN texted another IMS employee, who is African American, and falsely stated with no evidence whatsoever that Michael Boyd's wife, one of IMS' employees, made a comment about his first name being a "jungle name".

75.     Furthermore, other IMS employees contacted IMS leadership, including Wojciechowski, informing them of the texts they had received from SCHNAIRSOHN regarding the patently false allegations of drug use by Wojciechowski and sexual harassment by Michael Boyd.

76.     SCHNAIRSOHN has contacted IMS' clients, Sierra Space, Livermore, Millenium Space Systems and Iridium, and is spreading these false accusations.

77.     Thus, these false statements were published to third parties via text message, e-mail, and publicly on LinkedIn.

78.     The statements were false at the time of publication and SCHNAIRSOHN knew they were false at the time of publication, evidenced most notably by the fact that SCHNAIRSOHN threatened IMS, after his termination, of his intention to defame IMS if they did not succumb to his outrageous severance demands.

79.     Thus, Defendant published these statements, knowing they were false, simply to severely damage the reputation of IMS as retribution for being terminated.

80.     As such, Plaintiff has demonstrated that SCHNAIRSOHN acted with actual malice, knowing the statements he published were false, or with reckless disregard for the truth or falsity of the statements.

81.     SCHNAIRSOHN acted with express malice in publishing the statements because SCHNAIRSOHN's primary motive in publishing the statement was to injure the Plaintiff.

82.     The false statements were defamatory because they subjected IMS, its President and employees to hatred, distrust, ridicule, contempt, and disgrace in the industry at large, based on public LinkedIn posts and contact with IMS clients directly.

83.     SCHNAIRSOHN has continued to contact IMS employees in a harassing manner while spreading blatant lies about the company.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

84.     With SCHNAIRSOHN continuing to publicly post malicious remarks on LinkedIn for the viewing public to see, and pretending to still be part of the company and therefore speaking on behalf of it, the reputational damage is incalculable to IMS.

85.     IMS has suffered, and will continue to suffer damages due to the malicious and depraved behavior of SCHNAIRSOHN, including economic and non-economic damages.

WHEREFORE, IMS demands judgment against SCHNAIRSOHN for damages, including injunctive relief and punitive damage, costs, interest, and, and all other relief that the Court deems just and proper.

## COUNT II: TORTIOUS INTERFERENCE
### *(CUSTOMERS)*

86.     IMS incorporates and realleges paragraphs 1-66 above as if fully set forth herein.

87.     Prior to SCHNAIRSOHN's termination, IMS had a robust relationship with numerous vendors.

88.     Notably, IMS has existing relationships with companies such as Livermore, Sierra Space, Millenium Space Systems, and Iridium, which SCHNAIRSOHN knows.

89.     However, SCHNAIRSOHN began contacting these companies after IMS fired him and spread false and defamatory statements about IMS, its President and its employees in an effort to damage the business relationship IMS has with its clients.

**Cadogan Law | 300 S. Pine Island Road, Suite 107 | Plantation, FL 33324 | T: 954.606.5891 | www.cadoganlaw.com**

90.     SCHNAIRSOHN stated "I will be reporting this illegal drug use and receipt to the Department of Defense, Department of Energy, all of Intra's clients as well as its current employees and Intra FSO".

91.     SCHNAIRSOHN threatened to slander IMS' reputation to its clients, including Millenium Space Systems, giving Wojciechowski a deadline of 5 PM EST that day to respond to SCHNAIRSOHN's coercive Severance Agreement and eventually indicating that he did indeed "respond" to Millenium Space Systems.

92.     In addition to Millenium Space Systems (a Boeing company), SCHNAIRSOHN admitted that he informed clients Livermore and Sierra Space of these patently false rumors, as well as "every employee at IMS and now ClearPlan and now every client has been told that Michael Boyd is a sexual predator and [IMS employee and Boyd's wife] Demi is a racist – and you are employing such, good luck with that."

93.     SCHNAIRSOHN has contacted IMS' clients, Sierra Space, Livermore, Millenium Space Systems and Iridium, and is spreading these false accusations.

94.     SCHNAIRSOHN also mentioned that he spoke to Iridium and that Sierra Space was notified of the false allegation that Michael Boyd was suspended.

95.     In fact, SCHNAIRSOHN e-mailed Iridium representatives and mentioned that "I would suggest holding off on any other IMS candidates right now and growing the team whereas IMS may have some further legal issues coming

about… also their CA site leader was just suspended today for for [sic] cyber stalking and sexual harassment pending investigation".

96.     SCHNAIRSOHN clearly knew of these existing business relationships and intentionally attempted to extort IMS into agreeing to SCHNAIRSOHN's demand for over $1 million, or else threaten to spread these blatant lies to these clients.

97.     A number of existing clients of IMS have notified it that they have received messages from SCHNAIRSOHN that claim IMS and its employees committed various crimes and harassment of employees.

98.     As a result, SCHNAIRSOHN intentionally interfered with IMS' business relationship with one of its existing customers by purposely spreading malicious lies about IMS and its employees to key clients of IMS, with the sole purpose of interfering with IMS' business relationships.

99.     SCHNAIRSOHN's interference was unjustified, and SCHNAIRSOHN was not privileged to interfere with these relationships, especially through blatant lies.

100.    As a result of SCHNAIRSOHN's intentional interference, IMS has suffered damages.

WHEREFORE, IMS demands judgment against SCHNAIRSOHN for damages, including injunctive relief and punitive damages, costs, interest, and all other relief that the Court deems just and proper.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

## COUNT III: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (*EMPLOYEES)*

101.    IMS incorporates and realleges paragraphs 1-66 above as if fully set forth herein.

102.    Before SCHNAIRSOHN's termination, IMS had a robust relationship with its employees and fostered a culture of trust.

103.    However, after SCHNAIRSOHN's termination, SCHNAIRSOHN began contacting current employees to spread these malicious lies about IMS and certain other IMS employees.

104.    SCHNAIRSOHN stated that "every employee at IMS" knows of the patently false claims of drug use, sexual harassment, and racism at IMS.

105.    In furtherance of his concocted scheme to slander IMS and its employee, Michael Boyd, SCHNAIRSOHN attempted to coerce other IMS employees to report Boyd for harassment, unless IMS terminated him.

106.    SCHNAIRSOHN stated that "all your employees are reaching out to me petrified of being associated with a company with drug ties – I will post police reports next whereas they are public record" after SCHNAIRSOHN contacted numerous employees and made public LinkedIn posts.

107.    The blatant lies did not stop there – SCHNAIRSOHN texted another IMS employee, who is African American, and falsely stated with no evidence whatsoever

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

that Michael Boyd's wife, one of IMS' employees, made a comment about his first name being a "jungle name".

108.    Other IMS employees contacted IMS leadership, including Wojciechowski, informing them of the texts they had received from SCHNAIRSOHN regarding the patently false allegations of drug use by Wojciechowski and sexual harassment by Boyd.

109.    SCHNAIRSOHN clearly knew of these existing employment relationships and intentionally attempted to severely damage these relationships following his termination from IMS and because IMS refused to be extorted into agreeing to his severance package.

110.    In fact, at least one potential new hire has already reneged on its commitment to join IMS because of SCHNAIRSOHN's actions.

111.    Without justification or privilege, SCHNAIRSOHN intentionally interfered with this employee relationship by purposely spreading malicious lies about IMS to its own employees.

112.    SCHNAIRSOHN's interference was unjustified, and SCHNAIRSOHN was not privileged to interfere with these relationships, especially through blatant falsehoods that have no basis in fact.

113.    As a result of SCHNAIRSOHN's intentional interference, IMS has suffered damages.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

WHEREFORE, IMS demands judgment against SCHNAIRSOHN for damages, including injunctive relief and punitive damages, costs, interest, and all other relief that the Court deems just and proper.

## COUNT IV: VIOLATION OF FLORIDA'S COMPUTER ABUSE AND DATA RECOVERY ACT

114.   IMS incorporates and realleges paragraphs 1-66 above as if fully set forth herein.

115.   Through its investigation, IMS has learned that SCHNAIRSOHN recently improperly appropriated IMS information and multiple IMS documents by forwarding them to his wife's email address. These documents include the contact information of IMS clients and résumés of IMS' staff.

116.   The documents that SCHNAIRSOHN forwarded to himself, upon information and belief, constitute the confidential and proprietary information of IMS.

117.   IMS did not authorize SCHNAIRSOHN to send these documents to a personal e-mail address or otherwise have personal access to them, either during employment with IMS or after termination.

118.   According to Florida Statutes Section § 668.803, it is a prohibited acts when: A person who knowingly and with intent to cause harm or loss: (1) Obtains information from a protected computer without authorization and, as a result, causes harm or loss. *See* Fla. Stat. Section § 668.003.

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

119.    It is without question that SCHNAIRSOHN obtained information from IMS' computer systems, without any authorization from IMS whatsoever, and as a result, harm was caused to IMS.

120.    Under remedies for violation of Fla. Stat. § 668.003, IMS is entitled to recover the misappropriated information, program, or code, and all copies thereof, that are subject to the violation, as well as attorneys' fees. *See* Exhibit "U".

WHEREFORE, IMS demands judgment against SCHNAIRSOHN for damages, including injunctive relief, costs, interest, and reasonable attorneys' fees pursuant to Fla. Stat. Section § 668.003, and all other relief that the Court deems just and proper.

Dated:  July 25, 2024                              Respectfully Submitted

By:      */s/ Gina Cadogan*
          GINA MARIE CADOGAN
          Fla Bar No: 177350
          ABHISHEK V. RAMASWAMI
          Fla. Bar. 1031719
          CADOGAN LAW
          300 S. Pine Island Road, Ste. 107
          Plantation, FL 33324
          Telephone: 954.606.5891
          Facsimile: 877.464.7316
          Email: gina@cadoganlaw.com
          Email: ab@cadoganlaw.com
          Email: tyler@cadoganlaw.com