# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

PROBATE & FAMILY COURT
DOCKET NO. 08D-3429-DV1

ERIC SCHNAIRSOHN, )
    Plaintiff )
           )
           )
    vs. )
           )
ELIZABETH LEVINE, )
    Defendant )

> "…although this is unusual, the Court cautions other
> forums before which [Eric Schnairsohn] appears
> that *he lacks credibility entirely*…"
>
> -- *Judge Peter DiGangi,*
> *October 27, 2009, Findings of Fact following Divorce trial*

------

## MOTHER'S OPPOSITION TO
## ERIC SCHNAIRSOHN'S MOTION FOR TEMPORARY ORDERS
### and
## MOTHER'S REQUEST FOR COUNSEL FEES

*Summary & Statement of the Case*

More than 14 years after <u>he</u> suggested and <u>he</u> chose to walk away from and have no "contact" with the parties' now 17-year-old son, Cameron, Eric Schnairsohn (Eric) now urges this Court to permit him to attend probably the most important sporting event of Cameron's life. Why? Because *Eric wants* to "create a memory" *for Eric.* What may be best *for Eric*, however, is not what is best for Cameron. Here, there is no possible benefit <u>to Cameron</u> and Eric does not suggest otherwise. Nor is there any "injury, harm or damage" that has been alleged that "might reasonably be expected to occur if relief pending a judgment…is not granted." G.L. c. 208, § 28A. Indeed, the requested relief is likely to be more disruptive than anything. To be sure, Eric fails even to cite the requisite statutory authority and instead relies on two

FILED

JUL 0 2 2024

**EXHIBIT
F**

i40

meritless arguments: **(1)** he claims for the first time in 14+ years that the term "contact" and the phrase "stay away" are undefined in the Judgment and are now somehow "ambiguous." See Motion at ¶3.[1] Yet, for the last 14+ years, he knew full-well what they meant; and **(2)** he "has not contacted the parties' son directly in 14 years." See Motion at ¶4. This is a knowingly and materially false statement. In fact, Eric and his current wife have directly "contacted" Cameron multiple times and Eric has directly "contacted" Elizabeth Levine ("Ms. Levine") multiple times in violation of this Court's Judgment. And as recently as June 4, 2024, Eric made a veiled threat concerning counsel's college-age daughter. See infra at page 8.

Under no circumstances can Eric be trusted. He already has clearly and convincingly proven that he will do what he wants whether it's failing and refusing to pay support or whether it is to email Ms. Levine or have his wife reach out to Cameron on social media. The bottom line is that neither Eric nor this Court writes on a *tabula rasa*. Not only has Eric failed to allege any material or substantial changes of circumstances to justify any ultimate relief and warranting dismissal of the underlying Complaint, see E.K. v. S.C., 97 Mass. App. Ct. 403, 408-409 (2020) ("As in any modification proceeding, the father must first establish that a material and substantial *change* in circumstance has occurred to warrant a change…and that *the change is in the child's best interests*"), but he also fails to identify any basis whatsoever to award any interlocutory relief pending a trial on the merits. Eric's personal desire to "create a memory" for himself is hardly sufficient. His motion

---

[1] Furthermore, if, as Eric suggests, the language of the parties' Agreement and prior Judgment is indeed "ambiguous," the Court must hear testimony concerning the parties' intentions. Representations of counsel, via a zoom hearing, will not suffice. See Jones v. Jones, 101 Mass. App. Ct. 673 (2022).

2

should be <u>DENIED</u> in its entirety, and he should be <u>ORDERED</u> to reimburse Ms. Levine all counsel fees incurred by her in responding. <u>See</u> G.L. c. 208, § 38; G.L. c. 231, § 6F. <u>See also</u> <u>Heal v. Wu</u>, 59 Mass. App. Ct. 1101 (Memorandum of Decision and Order Pursuant to Rule 1:28) (2003) (*affirming* attorney fees to defendant-mother where trial judge "found that the father had used the court as a weapon in his ongoing inability to accept reality," and filed a "groundless [modification] complaint").

BRIEF FACTUAL AND PROCEDURAL HISTORY

This Court can take "judicial notice of the findings of fact entered in the [prior] divorce and modification actions." <u>Heal v. Wu</u>, <u>supra</u>.

<u>The Divorce</u>: After more than a year of highly contested litigation and following 2 days of trial, the parties divorced in October 2009. A few of the trial judge's findings are important to put Eric's latest, self-centered filing, in context. In particular, Judge DiGangi specifically found:

- "[Ms. Levine] testified to several instances of **violent or physical conduct** exhibited by [Eric] both before and after the birth of their [son];"

- Eric "**was abusive to the parties' dog**;"

- Eric's conduct was "**dilatory and unreasonable**;"

- Eric displayed a "**pattern of badgering**" Ms. Levine with emails... sending [her] as much as 35 emails per day....frequently contain[ing] **threats and slanderous statements**...;"

- Eric made "**frivolous filings** throughout" the litigation;

- Eric "exhibited a **pattern of threatening behavior** toward" Ms. Levine;

- Eric "**practiced both coercion and duress against**" Ms. Levine;

- Eric knowingly provided "**false and misleading**" disclosures to the Court;

3

- ". . . [Eric]… threatened to report [Ms. Levine] to nearly every alphabet agency, including the FBI, CIA, IRS, DOR, and BBO…;"

- "…[Eric]…appears to be **malicious and intent on inflicting pain** on [Ms. Levine] and her family, [and] has become fixated on this litigation;"
- "this court found [Eric's]…testimony to be **highly incredible**. Not only was [he] entirely unreliable, but his failure to tell the truth while under oath constitutes perjury."

Post-Divorce Contempt Actions: Following the divorce, in addition to refusing to pay a cent in child support, Eric ratcheted up his venomous attacks against and harassment of Ms. Levine and anyone who supported her or spoke out against him, including her family and her attorney (the undersigned). In particular, as reflected in the Motion to Prohibit Contact (**docket entry #93**), he:

- began contacting the managing partners of Ms. Levine's law firm, Goulston & Storrs, in an effort to get her fired;

- contacted the IRS and DOR against Ms. Levine and her parents, accusing them of tax fraud;

- reported Ms. Levine to the BBO;

- contacted the FBI against Ms. Levine;

- contacted the Attorney General's office against Ms. Levine;

- contacted Massachusetts Lawyer's Weekly and the Boston Herald;

- accused Ms. Levine of "credit card fraud" and reported her to the police and to the District Attorney's Office;

- reported Ms. Levine's parents to the Better Business Bureau, the Banking Commissioner and the Real Estate Appraisal Board;

- reported **a witness who testified against him** to the IRS, DOR and Attorney General; and

- attempted to get a restraining order against Ms. Levine's counsel (the undersigned).

4

Eric also ignored literally <u>all</u> of his financial obligations under the Judgment, initially seeking protection from the Bankruptcy Court, and later necessitating multiple Complaints for Contempt to compel him to pay support. As Judge DiGangi later specifically found:

- Eric "threatened to make the proceedings as costly as possible, intentionally and inexcusably violated the terms of this court's…Judgment;" and

- Eric's "actions…were willful, inexcusable, and unjustified."

Ultimately, in 2010, Eric was incarcerated for non-payment of support.

<u>Post-Divorce Modification</u>: In exchange for his freedom and a reduction of his financial obligations to the parties' son, **Eric himself specifically requested** that:

…he cede sole legal custody and all decision-making abilities to [Ms. Levine]. **He also has suggested** that his parenting time be suspended indefinitely, and that such a suspension is in [the parties' son's] best interests.

<u>See</u> Judgment and Modification Agreement at page 2, paragraph 1 (emphasis added). Courtesy copies are appended for the Court's convenience. Eric agreed to "not contact or communicate (**directly or indirectly through third parties**) in **any medium** with" Ms. Levine or the parties' son, and that he would "stay away from" Ms. Levine and their son. <u>Id</u>. at page 5, paragraphs 13-14 (emphasis added). He acknowledged that he: "made [the] decision [to forfeit all contact with their son] knowingly and after conferring with counsel of his choosing," <u>Id</u>. at page 2, paragraph 1, read the Modification Agreement in its entirety "line by line," and signed the Modification Agreement "freely, voluntarily and understanding the consequences of" his decision to forfeit all contact with their son. <u>Id</u>. at page 4,

5

paragraph 5.

After a colloquy, at which Eric and his attorney were present, the Court (DiGangi, J.) approved the parties' June 17, 2010 Modification Agreement.

Post-June 2010 Violations:

Despite his assurances set forth in the Agreement, Eric grossly neglected his financial responsibilities to the parties' son between June 17, 2010, and August 4, 2023, and accumulated arrears of *more than* $254,000. In 2023, Ms. Levine then filed *another* Complaint for Contempt. See docket entry **#124**. To avoid a hearing and the prospect of returning to jail, Eric promptly agreed to pay Ms. Levine *more than* **$150,000**. See docket entry **#128**.

-------------------

ARGUMENT

1.  **ERIC'S MOTION MUST BE DENIED**

**A.** Eric Continues to Lie and Cannot be Trusted.

Judge DiGangi's divorce Findings relative to Eric's inability and incapacity to tell the truth were prescient. Indeed, a quick search of the www.MassCourts.org portal and Google reveals numerous instances of Eric's propensity for deception, including:

- criminal violations of a c. 209A, see *Commonwealth v. Schnairsohn*, Lowell District Court, Docket No. 0911-CR-008474;

- criminal unauthorized access of a computer system, *Commonwealth v. Schnairsohn*, Wrentham District Court, Docket No. 1457-CR-00324;

- criminal fugitive from justice, *Commonwealth v. Schnairsohn*, Stoughton District Court, Docket No. 1855-CR-00656;

- theft by deception, sentenced to 2 years incarceration with all but 90 days

suspended and 2 years' probation in the Cumberland Maine Criminal Court in June 2018 (CUMCD-CR-2017-02534); and

- failure to pay for services resulting in a civil judgment, *Manning-Zoll v. Schnairsohn*, Essex Superior Court, Docket No. 1077-CV-01430.

See also www.bizjournals.com/boston/real_estate/2012/07/MA-regulators-take-action-against-agents.html ("The Massachusetts Board of Registration of Real Estate Brokers and Salespersons has taken action against 10 brokers and nine appraisers.")

By email, dated May 25, 2024, Eric forwarded the undersigned -- Ms. Levine's counsel since 2008 -- a Motion he reportedly intended to file seeking permission to attend the World Junior Ultimate Championships (WJUC) in July, where Cameron will be playing on the U.S. National Team and Ms. Levine will be in attendance.

On June 3, 2024:

- at *10:52AM*, Eric forwarded to the undersigned an email communication he had with AJCM **Renee Kahn**;

- at *11:10AM*, Eric "looped" the undersigned into an email exchange he had with AJCM, **Alexandra Sisk**;

- at *11:25AM*, Eric intimated that the Court had granted an *ex parte* request, explaining to Ms. Levine's counsel that:

> **I did just speak with the Court just now and based on our conversation [with the Court] Leah and I will be attending the Frisbee Event in England in July, 2024.**
>
> I am going to CC this message to Court on my Gmail account per their instructions.

See true and accurate email received from Eric Schnairsohn at **TAB #1**.

Within five (5) minutes, at *11:30AM*, the undersigned emailed Renee Kahn. In response, Eric confessed that he learned from the Court that his motion not only had <u>not</u> been acted on but also that his motion would be returned to him and

7

considered "un-filed," the matter would be "closed," and that there was not even anything "pending" for the Court to act on. Id. Eric's implicit suggestion to counsel that the Court had authorized him to attend the WJUC was deceptive and false.

Later that same day on June 3, 2024, ostensibly because he did not get what he wanted, Eric's true colors returned when he launched a series of invectives, referring to counsel as a **"disgusting person,"** that counsel **"should be ashamed,"** that counsel was **"a disgusting human being,"** was "[not a] decent human being," and was a "bully," who was wasting "the Court's time and resources." **TAB #1.** Indeed, it was precisely that type of behavior that Ms. Levine sought to avoid in the Modification Agreement.

The next day, June 4, 2024, Eric then sent another email referring to counsel as **"just a glorified delivery boy, a puppet on a string."** Id. In that email, Eric then cryptically commented:

> One day I will tell you about an encounter I had a while ago at **UMASS Amherst with someone you may know** after the case ends, and we may even enjoy a laugh over the story I have to tell.

Id. at email, dated June 4, 2024, at 8:58AM.

### *Counsel's daughter attends UMASS Amherst.*

--------------------------------

Eric Now *Again* Misrepresents Facts to this Court. In his submissions, Eric makes two deceptive and materially false statements to this Court. *First,* in his Emergency Motion, Eric represents that:

> **"[o]ver the past fourteen years, [he] has not once attempted to breach the terms of the "no contact" provisions of the parties'** [Agreement and Modification Judgment]."

See Emergency Motion for Short Order at ¶6. *Second,* Eric claims that he:

8

**"has not contacted the parties' son directly in 14 years."**

See Motion for Temporary Orders at page 2, ¶4. Each of these statements is false.

      **1.**     Eric *Directly* Contacts Ms. Levine Multiple Times: On each of at least the following eight (8) occasions, Eric directly emailed Ms. Levine:

- May 9, 2019, 12:25PM. In response, Ms. Levine reminded Eric that he was "not supposed to be contacting me. Don't do it again. I have reminded you of this previously…"

- May 9, 2019, 12:37PM

- June 17, 2021, 2:29PM. In response, Ms. Levine explained "Both Rich [Novitch] and I have been crystal clear on this point.  You are not permitted to contact me or Cameron, period…"

- June 17, 2021, 5:02PM, Eric then responded, in relevant part, that "If Cameron is happy and you think re-entering me into his life prior to 18 is disrupting, I can live with that, I trust your judgment on that….**You won't hear from me again prior to 18**."

Unfortunately, Eric is not a person of his word and continued to contact Ms. Levine via email on each of the following dates:

- March 23, 2022;

- October 1, 2022;

- December 2, 2022; and

- April 6, 2023.

See true and accurate copies of emails appended hereto at **TAB #2**. Each and every one of these electronic communications violated the Modification Judgment.

      **2.**     Eric *Directly and Indirectly* Contacts the Parties' Son:  Eric has represented to this Court that in May 2024, he "learned" "through social media," that Cameron would be representing the United States in an ultimate frisbee World Games competition. See Emergency Motion at ¶2 and Motion for Temporary

9

Orders at page 2, ¶4. Contrary to Eric's claims that he has not contacted the parties' son directly in more than 14 years, Eric has in fact <u>directly</u> contacted their son by following Cameron's social media account and reacting to Cameron's social media postings, which he must know results in notifications being sent directly to Cameron. In response, and with Cameron's agreement, Ms. Levine blocked Eric's access to Cameron's social media. Not to be deterred, Eric's current wife -- whose last name Robins-Schnairsohn <u>does not appear in her social media handle</u> – reached out *directly* to Cameron and sought permission to join Cameron on his private social media account and further followed Cameron on his public social media account. Once the connection with Eric's wife was discovered, she too was "blocked."

Notwithstanding, some combination of Eric and his wife have appeared as followers on social media accounts linked to Cameron's social activities and also have tried to connect with and follow Cameron's high school friends on social media when they could not get direct access to Cameron. We can only assume this is precisely the "social media" Eric refers to when he states he "learned" about their son's participation in the WJUC, <u>because, as of the date of Eric's filing, Cameron's name had not yet been released publicly by USA Ultimate as a team member.</u>

The parties' Modification Agreement and Judgment are clear. <u>All</u> contact -- <u>direct or indirect</u>, individually or through any third persons "in any medium" -- was prohibited. Each and every one of Eric's direct and indirect contacts and each and every one of his wife's contacts on Eric's behalf violated the Modification Judgment. As such, Eric already has demonstrated that he is unable to comply with this Court's orders and refrain from contacting either Ms. Levine or Cameron. He should now be estopped from obtaining any relief from this Court.

**B.** Eric Failed to Justify Relief under § 28A

Even if Eric could be trusted, which he cannot be, he has failed to justify relief under c. 208, § 28A. Pursuant to § 28A, to justify an advance decision on an ultimate issue and deprive Ms. Levine of an evidentiary hearing or trial on the merits of Eric's Complaint, he is required to both allege and prove that some "injury, harm or damage" would come to the parties' son, which "might reasonably be expected to occur if relief pending a judgment…is not granted." In none of his submissions does Eric even allege that depriving *Eric* of the ability watch Cameron in England would remotely be harmful *to Cameron*. Indeed, the sole thrust of Eric's Complaint and motions is that it is what Eric wants or needs so that Eric can "create a memory" *for Eric*. Over the prior 14+ years, Cameron has created countless "memories" – all without any involvement of Eric. Eric does not so much as hint that Ms. Levine has not done a superb job at raising Cameron.

Eric's facially selfish demand to create a "memory" *for Eric*, has no regard whatsoever *for Cameron* – much like his refusal to pay child support from 2009-2010, his insistence 14+ years ago in 2010 to walk away from Cameron in exchange for a reduction in his support obligations, and his subsequent failures between 2010 and 2023 to pay some $254,000 in obligations necessitating a further Contempt.

Paradoxically, if Eric is allowed to attend the WJUC in England, the mere knowledge of Eric's presence will likely cause an **"injury, harm or damage"** to Cameron on account of the possible distraction and disruption his presence may cause, which is something this Court must strive to avoid. Rather than see things through that prism, Eric patently ignores *Cameron's* and elevates his own wants, needs, and desires. Indeed, there is not so much as one sentence in anything Eric has

11

filed that seeks to advance *Cameron's* best interests. The litmus test is assuredly NOT what is in Eric's best interests. Everything, literally every sentence of his submissions, is geared toward what *Eric wants for Eric.* That is not a basis for a modification of a 14+ year old Judgment and it certainly is not a basis to grant temporary relief pending a full hearing on the merits.

**C.**  There Is No Chance Eric Can Simply Blend Into the Crowd.

Eric claims that he will be able to "watch from afar" and stand on the opposite sideline from Ms. Levine so as to avoid contact with Ms. Levine or Cameron.  Eric has a complete misunderstanding of the logistics of these games. Specifically, ultimate frisbee is played on a field that is smaller than both a football and a soccer field. The sidelines are "active," which means that they are lined by players, coaches and support staff who are constantly moving up and down the field with the flow of the game. Players from each team are expected to be on both sidelines; in other words, one sideline is not reserved for each team and Cameron could be on either sideline at any given time. There is a very high risk that despite any protections that might be put in place, Eric will not be able to simply be an observer.  Indeed, Eric's prior violations of the Court's no-contact order demonstrate his inability to comply.  We have every reason to believe his behavior will not change were he to travel to England.

Moreover, it is unlikely that Eric and Ms. Levine will be permitted to stand on opposite sidelines, or even 50 yards from each other as his Motion proposes. Attached at **TAB#3** is the field map, which has been published for this tournament. While the park where the games are being held may be 44-acres, there is no "stadium" at this field complex.  Instead, the field area (and in particular, any field on

which Cameron will be playing) is significantly condensed.  Ms. Levine expects that spectators will be unable to view the games from in between fields 6/7, 12/13, 11/10/9 because players from both teams on games taking place on contiguous fields will need that space.[2]  With respect to the streaming fields (which Ms. Levine assumes are fields 1, 2 and 3), there may be specific viewing areas for spectators where Ms. Levine and Eric would necessarily find themselves together, in particular to accommodate the aerial lift and video equipment necessary to stream the games.  This too will impact the spectator layout and increase the likelihood of Cameron-Eric contact, which assuredly is NOT in Cameron's best interests as he competes on the world stage. Also attached as part of **TAB #3** is a photograph of the gold medal game from the last time this event was held.  As the Court can see, spectators are condensed on a series of small risers. This is not a situation where Eric can just hide in the crowd.

**D.** Eric Can Watch From Afar.

Eric claims that he is "agreeable to watching from afar," avoiding any "intentional visible gestures" or "cheering directly at the parties' son." If that is truly the case, there is an obvious solution to Eric's Motion, which serves the interests of all parties and avoids any possible contact with Cameron or Ms. Levine:  Eric can watch Cameron play from the United States because certain of the games will be televised.  While the schedule is just preliminary, currently at least two games appear to be set for streaming, with the opportunity (and distinct likelihood) for up to three more.

---

[2] A preliminary schedule has been released and it appears that Cameron's team will be playing certain games on fields 1, 6, 7 and 10.

## 2. <u>ERIC SHOULD BE ORDERED TO PAY MS. LEVINE'S COUNSEL FEES.</u>

This Court has discretion to award attorney's fees incurred in defending a baseless and meritless modification action under G.L. c. 208, § 38. <u>Cooper v. Cooper</u>, 62 Mass. App. Ct. 130, 141 (2004). <u>See</u> <u>Kelley v. Kelley</u>, 64 Mass. App. Ct. 733, 742 (2005)(affirming award of counsel fees, observing "[i]n this matter, the judge ruled that the husband's original modification complaint was without merit…As the result of the filing of the modification complaint, the wife was required to finance attorney's and expert's fees. . .defending against the husband's claim. . ., a claim that the judge ruled was entirely without merit."); <u>Heal v. Wu</u>, supra (*affirming* award of attorneys fees where modification complaint was baseless)

For the reasons highlighted above, this Court must conclude that Eric's extant Motion is meritless and award Ms. Levine all counsel fees incurred in having to respond.

CONCLUSIONS

For these reasons, Eric Schnairsohn's Motion must be <u>DENIED</u>. Ms. Levine submits that the Motions are so devoid of merit as to be frivolous and otherwise justifies an award of counsel fees.

Respectfully submitted,
Elizabeth Levine
By her attorney,

July 1, 2024

Richard M. Novitch, BBO# 636670
Todd & Weld LLP
One Federal Street
Boston, Massachusetts 02110
617-720-2626
RNovitch@toddweld.com

14

<u>CERTIFICATE OF SERVICE</u>

I, Richard M. Novitch, hereby certify that I served a copy of the within

Opposition upon the plaintiff by emailing a copy of same to his counsel of record

pursuant to Standing order 4-20 as follows:

Laurel K. Koes, Esq.
LKoes@connkavanaugh.com
Christina Pashou, Esq.
CPashou@connkavanaugh.com
Conn Kavanaugh
One Federal Street, 15th Floor
Boston, Massachusetts 02110

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

_____
Richard M. Novitch

15