9.1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
C.A. NO. 2281cv03614

CLEARPLAN, LLC,

      Plaintiff,

   v.

RICHARD MOSKOWITZ,
JOSEPH MOSKOWITZ,
and PROJITZ, LLC,

      Defendants.

**RECEIVED**

1/26/2023

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF:**
**(1) RULE 12(b)(6) MOTION TO DISMISS COUNTERCLAIM; AND (2) SPECIAL**
**MOTION TO DISMISS PURSUANT TO M.G.L. ch. 231, § 59H**

James D. Smeallie (BBO # 467380)
Benjamin M. McGovern (BBO #661611)
HOLLAND & KNIGHT LLP
10 Saint James Avenue
Boston, Massachusetts 02116
jd.smeallie@hklaw.com
benjamin.mcgovern@hklaw.com
(617) 523-2700
*Counsel for Plaintiff ClearPlan, LLC*

Date:  January 3, 2023

KO

EXHIBIT
G

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

    A.    THE PARTIES............................................................................................................2

    B.    CLEARPLAN SUES DEFENDANTS FOR BREACHES OF THEIR RESTRICTIVE
        COVENANTS.............................................................................................................2

    C.    DEFENDANTS FILE A RETALIATORY COUNTERCLAIM .......................................................3

ARGUMENT.................................................................................................................................5

I.    THIS COURT SHOULD GRANT CLEARPLAN'S RULE 12(B)(6) MOTION
    BECAUSE THE COUNTERCLAIM FAILS TO STATE PLAUSIBLE CLAIMS
    FOR RELIEF .........................................................................................................................5

    A.    THE COUNTERCLAIM SHOULD BE DISMISSED BECAUSE DEFENDANTS'
        ALLEGATIONS "UPON INFORMATION AND BELIEF" DO NOT ESTABLISH A
        PLAUSIBLE ENTITLEMENT TO RELIEF.....................................................................6

    B.    THE COUNTERCLAIM SHOULD BE DISMISSED BECAUSE STATEMENTS MADE IN
        CLEARPLAN'S COMPLAINT CANNOT FORM THE BASIS FOR CIVIL LIABILITY .................10

II.    THIS COURT SHOULD GRANT CLEARPLAN'S ANTI-SLAPP SPECIAL
    MOTION TO DISMISS BECAUSE THE COUNTERCLAIM IS BASED ON
    STATEMENTS MADE IN CLEARPLAN'S COMPLAINT ..........................................11

    A.    THE COUNTERCLAIM IS BASED ON CLEARPLAN'S PETITIONING ACTIVITY....................12

    B.    DEFENDANTS WILL BE UNABLE TO ESTABLISH THAT CLEARPLAN'S COMPLAINT IS
        FRIVOLOUS OR CAUSED ACTUAL INJURY ......................................................................14

    C.    DEFENDANTS WILL BE UNABLE TO PROVIDE THIS COURT WITH FAIR ASSURANCE
        THAT THEIR COUNTERCLAIM WAS DESIGNED TO DO ANYTHING BUT CHILL
        CLEARPLAN'S LEGITIMATE PETITIONING ACTIVITIES ...................................................15

## INTRODUCTION

Defendants are a former subcontractor and employee of Plaintiff.  In October 2022, Plaintiff initiated this action because Defendants are in breach of certain non-solicitation, non-competition and confidentiality covenants that remained operative after the conclusion of their subcontractor and/or employment relationship.

In November 2022, Defendants threatened to file a counterclaim unless Plaintiff's claims against them were resolved.  Plaintiff informed Defendants that their putative counterclaim was meritless.  Defendants next threatened to file a counterclaim that would become "public knowledge" unless Plaintiff did "the right thing."  Plaintiff refused.  Defendants then filed a three-count counterclaim against Plaintiff pled almost entirely "upon information and belief." This counterclaim should be dismissed pursuant to Mass. R. Civ. P. 12(b)(6) and M.G.L. ch. 231, § 59H (the "anti-SLAPP statute").

The counterclaim should be dismissed under Mass. R. Civ. P. 12(b)(6) because Defendants' allegations upon information and belief are too vague and speculative to establish a plausible entitlement to relief, and the only allegation made upon their personal knowledge is subject to the absolute litigation privilege.  Similarly, Defendants' counterclaim should be dismissed under the anti-SLAPP statute because it seeks, at least in part, to impose liability on Plaintiff for making a public accusation in a complaint.  Nor will Defendants be able to avoid dismissal under the anti-SLAPP statute where, as here, Plaintiff's complaint has reasonable factual support and Defendants have demonstrated through their efforts to publicize this dispute that the real purpose of their Counterclaim is to chill Plaintiff's petitioning activities.  For the foregoing reasons, as more particularly described below, this Court should dismiss Defendants' counterclaim with prejudice and without leave to amend and should further award Plaintiff its costs and reasonable attorneys' fees.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      The Parties

Plaintiff, ClearPlan, LLC ("ClearPlan"), is a service provider that furnishes a broad range of program/project management services to clients with a particular focus on large federal aerospace and defense contractors.  *See* Pl's Compl. (Dkt. No. 1), ¶ 6; Def's C'Claim, ¶ 1.

From approximately September 2019 to September 2022, defendant, Projitz, LLC ("Projitz") and its principal, Richard Moskowitz, provided services to ClearPlan clients pursuant to a subcontractor agreement.  *See* Def.'s C'Claim, ¶¶ 21-22, 26-27.  Since the termination of that subcontractor agreement in September 2022, Projitz has continued to provide the same type of services in the industry, and holds itself out as a "competitor[]" of ClearPlan engaged in the "same trade or commerce."  *Id.*, ¶ 5.  Defendant, Joseph Moskowitz, was employed by ClearPlan from March 2017 up until the time of his voluntary resignation in August 2022.  *Id.*, ¶¶ 6, 20.  Following his resignation, Joseph Moskowitz accepted employment with Projitz.  *Id.*, ¶ 20.  Projitz, Richard Moskowitz and Joseph Moskowitz will be collectively referred to in this memorandum as "Defendants."

B.      ClearPlan Sues Defendants For Breaches of Their Restrictive Covenants

On October 13, 2022, ClearPlan filed the instant lawsuit against Defendants alleging that they are violating certain non-solicitation, non-competition and confidentiality covenants agreed to as part of their subcontractor and/or employment relationship with ClearPlan.  *See* Pl.'s Compl., ¶¶ 6-10.  Among other things, ClearPlan's complaint (the "Complaint") alleges Projitz violated its non-solicitation obligations to ClearPlan by: (1) soliciting L3 Harris (a ClearPlan client) for work; (2) soliciting and then hiring Joseph Moskowitz; (3) soliciting BAE Systems (another ClearPlan client) for work; (4) soliciting a ClearPlan employee named Julian Parish for employment; (5) soliciting a ClearPlan employee named Lisa Burkes for employment; and (6)

2

Date Filed 1/26/2023 6:20 PM
Superior Court Middlesex
Docket Number 2281CV03614

soliciting a ClearPlan employee named Stacey Hamilton for employment. *See id.*, ¶¶ 36-68. ClearPlan further alleges that Richard and Joseph Moskowitz misappropriated confidential information given to them by their brother, Daniel Moskowitz (who is a minority owner and former employee of ClearPlan), in order to assist with Projitz's solicitation of BAE Systems and current ClearPlan employees. *See id.*, ¶¶ 41, 51-52, 57, 62, 67. ClearPlan similarly alleges that Projitz and Richard Moskowitz misappropriated confidential information given to them by Daniel Moskowitz in order to solicit Joseph Moskowitz for employment. *See id.*, ¶¶ 39-41. On the basis of these allegations, ClearPlan asserts claims against Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, aiding and abetting breaches of fiduciary duty, and violations of M.G.L. ch. 93A.

C.    Defendants File a Retaliatory Counterclaim

During the week of November 14, 2022, Defendants' counsel called the undersigned counsel and stated that, unless the claims alleged in the Complaint were resolved, Defendants intended to file a counterclaim alleging that certain "issues" with ClearPlan's security clearances were giving it an "unfair advantage" against Projitz in the marketplace. *See* Affidavit of Benjamin McGovern ("McGovern Aff."), ¶ 2. In response, ClearPlan put Defendants on notice that these allegations were unequivocally false. Specifically, ClearPlan informed Defendants that their security clearance allegations seemed similar to frivolous accusations made by a former ClearPlan employee named Eric Schnairsohn, who had advanced such allegations as part of an effort to extort a lucrative severance package from ClearPlan after he was terminated for, among other things, submitting fraudulent invoices to the company for reimbursement. *See id.*, at Exh. A. ClearPlan further informed Defendants that: (1) ClearPlan's third-party security services vendor had investigated Schnairsohn's allegations and found them to be without merit; and (2) a

3

division of the Department of the Defense Counterintelligence and Security Agency had subsequently performed a Remote Enhanced Security Vulnerability Assessment of ClearPlan resulting in a March 3, 2021 finding that ClearPlan's "facility has an effective program for protecting classified information and [its] security program is in general compliance with current directives." *See id.*

Undeterred, Defendants pressed forward with their threats to file a counterclaim. On December 8, 2022, Richard Moskowitz left a voicemail for Josh Garvey (ClearPlan's President and majority owner) stating as follows:

> Hi Josh, this is Rich Moskowitz. I realize that we haven't really spoken at all about the lawsuit you filed against me, as well as the counterclaims that I'm about to file against you and Clearplan, and to make sure that there haven't been any misunderstandings. **I wanted to touch base with you before I filed the counterclaims tomorrow morning when they'll become public knowledge**. As you're well aware, I've got a brother who is still making a living off of Clearplan, still have friends working there, so **I really want to give you the opportunity to do the right thing before I start going on the offense against Clearplan**, and we can fight the battle in Court, but I'm hoping that we can just have a rational talk, give me a call back if you're willing. My number is []... Thanks.

*See id.*, at Exh. B (emphasis supplied).

The following day, Defendants filed a three-count counterclaim (the "Counterclaim") against ClearPlan asserting claims for: (1) tortious interference with contractual relations; (2) defamation; and (3) violation of M.G.L. ch. 93A. *See* Def's C'Claim, ¶¶ 42-55. These claims are premised on three categories of alleged wrongdoing. First, Defendants allege "upon information and belief" that they lost business from unidentified customers after ClearPlan told those customers that Projitz and/or Joseph Moskowitz are contractually prohibited from working for them. *See id.*, ¶¶ 32-36. Second, Defendants allege, based "upon information provided by [Schnairsohn] and belief," that ClearPlan obtained security clearances from the United States government "based on false information" that has, again "upon information and belief,"

4

permitted ClearPlan to win business from unidentified customers.  *Id.*, ¶¶ 39-40.  Third,

Defendants allege that "ClearPlan has publicly accused Projitz, Richard Moskowitz and Joseph

Moskowitz of wrongfully obtaining and using ClearPlan confidential information to their

benefit."  *Id.*, ¶ 37.

This Court should dismiss Defendants' Counterclaim pursuant to Mass. R. Civ. P.

12(b)(6) and M.G.L. ch. 231, § 59H because these allegations are implausible and speculative on

their face and also represent an unlawful effort by Defendants to chill ClearPlan's constitutional

right to petition this Court.

## ARGUMENT

**I.       THIS COURT SHOULD GRANT CLEARPLAN'S RULE 12(b)(6) MOTION BECAUSE THE COUNTERCLAIM FAILS TO STATE PLAUSIBLE CLAIMS FOR RELIEF[1]**

In order to survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), the factual

allegations in a counterclaim "must be enough to raise a right to relief above the speculative level

... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in

fact.)."  *Town of Sudbury v. Mass. Bay Transp. Auth.*, 485 Mass 774, 778-79 (2020) (internal

citations omitted).  In undertaking this analysis, however, this Court need "not regard as 'true'

legal conclusions cast in the form of factual allegations." *Baptiste v. Exec. Office of Health and*

*Human Servs.*, 97 Mass. App. Ct. 110, 114 (2020) (internal citations omitted).  Rather, "to be

sufficient a complaint must ... provide 'more than labels and conclusions.'" *Kelleher v. Lowell*

*Gen. Hosp.*, 98 Mass. App. Ct. 49, 51 (2020).

---

[1] ClearPlan disputes the truth of many of the facts alleged by Defendants, but recites them in Section I as they are alleged in the Counterclaim because those facts must be accepted as true for purposes of ClearPlan's Rule 12(b)(6) motion to dismiss.  ClearPlan, however, explicitly reserves its right to contest the truth of these allegations, if necessary, in support of its anti-SLAPP special motion to dismiss or at any other appropriate juncture of this litigation.

In sum, although this "plausibility standard is not akin to a 'probability requirement," [] it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 115; *see also Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 625-636 (2008) ("What is required at the pleading stage are factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement . . . that the plain statement possess enough heft to show that the pleader is entitled to relief."). Here, Defendants' Counterclaim falls far short of meeting this pleading standard because their vague and speculative allegations – the vast majority of which are made "upon information and belief" – do not establish a plausible entitlement to relief.

A.   <u>The Counterclaim Should be Dismissed Because Defendants' Allegations "Upon Information and Belief" Do Not Establish a Plausible Entitlement to Relief</u>

Allegations made upon information and belief are disfavored. Specifically, "when allegations in a complaint made 'upon information and belief' are speculative or conclusory, unsupported by facts, they are not entitled to deference from the Court." *Gilbert v. Fed. Nat. Mortg. Ass'n*, Civil Action No. 2010-3158, 2011 WL 1364019, at *2 (Mass. Super. Ct. March 31, 2011) (quoting from *Eggert v. Merrimac Paper Co., Inc.*, 311 F. Supp. 2d 245, 257-58 (D. Mass. 2004)). Here, Defendant's Counterclaim should be dismissed because it is pled almost exclusively upon information and belief.

Indeed, nearly all of the material paragraphs of Defendants' Counterclaim are pled "upon information and belief" and furnish no actual facts in support of Defendants' outright speculation. For example:

- Although Defendants allege "upon information and belief" that ClearPlan told "current and potential" customers about the restrictive covenants that bind Projitz and Joseph Moskowitz, they do not plead any facts that would identify those customers, detail the method of communication, establish the date(s) on which these communications were allegedly made, or describe the specific content of the alleged communications, *see* Def's C'Claim, ¶¶ 32 & 35;

6

- Although Defendants allege "upon information and belief" that ClearPlan's communications have "caused current and prospective customers" to "refrain from obtaining services" from Projitz, they do not plead any facts that would identify those customers, describe the services Projitz hoped to provide, establish the date(s) when this business was allegedly lost, or explain how or why the unidentified customers were purportedly influenced by ClearPlan's communications, *see id.*, ¶¶ 33 & 36;

- Although Defendants allege "upon information and belief" that ClearPlan has "obtaine[ed] and maintain[ed] security clearances" based on "false information regarding their need for the clearance and the projects they would be supporting," they do not plead any facts that would identify the security clearances or projects in question, describe how or why the information provided by ClearPlan was false, establish the date(s) when this false information was allegedly provided, or explain how or why the security clearances were issued on the basis of allegedly false information, *see id.*, ¶ 39; and

- Although Defendants allege "upon information and belief" that "ClearPlan has won contracts to support clients over Projitz" as a result of its allegedly fraudulent security clearances, they do not plead any facts that would identify the clients or contracts in question, establish the date(s) when this this business was allegedly "won" by ClearPlan, or explain how or why the unidentified clients were purportedly influenced by ClearPlan's security clearances, *see id.*, ¶ 41.

This lack of factual specifics is completely fatal to each count in Defendants' Counterclaim.  A claim for tortious interference with contract requires a plaintiff to plausibly allege, among other things, that it had a contract with a third party that was the subject of interference.  *See, e.g., Malden Transp., Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 282 (D. Mass. 2017) ("A plaintiff may not speculate about future business relationships when alleging this tort ... Instead, they must allege a specific business relationship that was interfered with by [defendant] ... The mere possibility that their proposal would be accepted by the customers is not sufficient."); *Kelleher*, 98 Mass. App. Ct. at 132 (first element of claim for tortious interference requires proof that "plaintiff had a contract or advantageous business relationship with a third party.").  Here, Defendants' claim for tortious interference fails because they do not identify any of the customers from whom they allegedly lost business, let alone plead the existence of an

7

actual contract or specific business relationship that was the subject of interference. *See Malden Transp., Inc.*, 286 F. Supp. 3d at 282 (holding that an "evanescent, hypothetical relationship lacks the specificity required to survive a motion to dismiss."); *Laudano v. 214 South Street Corp., Inc.*, 608 F. Supp. 2d 185, 196 (D. Mass. 2009) ("It is axiomatic that a defendant cannot intentionally and tortiously interfere with a contract when she is unaware of its existence.").[2]

Defendants' claim for defamation is likewise fatally flawed. "In Massachusetts, the tort of defamation is subject to a stricter pleading standard than other claims, requiring plaintiffs 'to plead the elements of their claims with specificity in order to survive a motion to dismiss' for failure to state a claim." *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 576 (D. Mass. 2015) (quoting from *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 432 n.7 (1991)). Specifically, "[t]o properly allege defamation, a plaintiff must specifically identify the allegedly false statement." *Kelleher*, 98 Mass. App. Ct. at 53 n.2. Here, the sum total of Defendants' allegations in support of their defamation claim is their naked speculation – made "upon information and belief" – that ClearPlan may have made unspecified statements regarding the enforceability of restrictive covenants that were "defamatory and false" and "intended to injure the good reputation of [Defendants]." *See* Def's C'Claim, ¶¶ 32, 35, 48-49. These are precisely the type of vague and conclusory allegations that do not state a plausible claim for defamation because they fail to specifically identify the purportedly false statement. *See Kelleher,* 98 Mass. App. Ct. at 53 n.2 ("The plaintiff's allegation that the defendant made statements that 'cast the plaintiff in a negative light,' but that does not identify a specific statement, is not sufficient."); *see also 3137,*

---

[2] Nor is this claim saved from dismissal by Defendants' boilerplate allegation that "ClearPlan understood and had knowledge of clients that Projitz had contractual relationships with and those that Projitz were engaged in contractual negotiations with." *See* Def's C'Claim, ¶ 43. This is precisely the type of "legal conclusion[] cast in the form of factual allegations" that Massachusetts courts reject when considering a motion to dismiss. *See, e.g., Kelleher*, 98 Mass. App. Ct. at 56 ("[T]he talismanic invocation in the complaint of particular conclusory phrases, standing alone and unsupported, does not prove or even imply malice.") (internal citations omitted).

*LLC v. Town of Harwich*, Civil Action No. 21-cv-10473-DJC, 2022 WL 267435, at *9 (D. Mass. Jan. 28, 2022) ("[T]he single paragraph in the amended complaint that mentions [the] call to Harwich Police does not identify the objectionable statement, or any details about same such that the Court could assess the truth or falsity of the statement."); *Johnson v. Allen*, Civil Action No. 22-cv-10907-DJC, 2022 WL 16823008, at *4 (D. Mass. Nov. 8, 2022) ("The statements made by [defendant] are not specified and therefore, whether same is reasonably susceptible of a defamatory meaning has not been plausibly alleged ... Since Plaintiffs fail to provide the alleged defamatory statement, the Court cannot make this threshold determination.").[3]

Finally, Defendants' ch. 93A claim should be dismissed as vague and speculative. In the first instance, to the extent the ch. 93A claim is premised on the purported acts of tortious interference and defamation alleged elsewhere in the Counterclaim, it fails for the same reasons set forth, *supra*. Nor can Defendants' ch. 93A claim stand on its own. For example, to the extent Defendants' ch. 93A claim alleges "upon information and belief" that ClearPlan may have fraudulently obtained security clearances, it fails the particularity requirement of Mass. R. Civ. P. 9(b) because it "does not indicate when, where and how often the allegedly false statements were made or what, specifically, was stated." *See Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013). Similarly, to the extent Defendants speculate ClearPlan may have communicated with unidentified customers in some unspecified way, their "failure to set forth

---

[3] Even assuming, *arguendo*, that Defendants' Counterclaim could be understood as alleging that ClearPlan made a specific statement to an identifiable customer regarding the enforceability of certain restrictive covenants (which it cannot), the claim for defamation would still fail because it does not plausibly establish that any such statement would be "reasonably susceptible of a defamatory meaning." *See Johnson*, 2022 WL 16823008, at *3. This is because statements merely "express[ing] a 'subjective view" are not statements of fact" capable of defamatory meaning. *See Kelleher*, 98 Mass. App. Ct. at 53. Here, statements made by ClearPlan (if any) regarding the enforceability of restrictive covenants would have represented nothing more than ClearPlan's subjective interpretation of those covenants. Under no circumstances could such a statement be interpreted as conveying an actual fact – let alone one that was false and defamatory. Defendants' claim for defamation should be dismissed for this additional reason. *See id.* (statement of "subjective state of mind" which is not "objectively verifiable" cannot form the basis for defamation claim).

9

any particular acts or practices marked by 'an extortionate quality ... of unfairness [and deceptiveness] ... necessitates a finding that the facts as pled are insufficient to state a claim." *See id.* Finally, because Defendants can only speculate that they may have lost business, their ch. 93A claim is deficient because it does not allege an "objective, identifiable harm that goes beyond the deception itself." *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) ("It is thus not enough to claim that the defendant's improper conduct created a <u>risk</u> of 'real economic damages' ... Speculation concerning still inchoate harm does not establish the distinct injury that 'is an essential predicate for recovery under' Chapter 93A.'").

Defendants cannot hide behind the "upon information and belief" qualifier as a means of avoiding their basic pleading obligations. Because the Counterclaim contains no factual heft beyond Defendants' rank and conclusory speculation that wrongdoing might have occurred, it should be dismissed pursuant to Mass. R. Civ. P. 12(b)(6).

B. <u>The Counterclaim Should be Dismissed Because Statements Made In ClearPlan's Complaint Cannot Form the Basis for Civil Liability</u>

Nor is the Counterclaim saved from dismissal by the only material allegation based upon Defendants' personal knowledge. Paragraph 37 of the Counterclaim alleges that "ClearPlan has publicly accused Projitz, Richard Moskowitz, and Joseph Moskowitz of wrongfully obtaining and using ClearPlan confidential information to their benefit." Def's C'Claim, ¶ 37. But what Defendants fail to clarify is that the "public" accusation referenced in this paragraph **was made through ClearPlan's Complaint**. *See* Pl's Compl., ¶¶ 39-41, 51-52, 57, 62, 67. This is fatal to the Counterclaim because the statements set forth in ClearPlan's Complaint are absolutely privileged.

"The litigation privilege precludes civil liability based on 'statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding....'" *Gillette Co. v.*

10

*Provost*, 91 Mass. App. Ct. 133, 140 (2017) (internal citations omitted).  Further, "[i]f the privilege applies, its protections are absolute." *Id.*  That is the case here.  For the reasons set forth in Section I.A, *supra*, Defendants' allegations made "upon information and belief" are too vague and speculative to state a plausible claim for relief.  And the only allegation not subject to that infirmity – *i.e.,* that ClearPlan publicly accused Defendants of misappropriating confidential information – refers to a statement set forth in ClearPlan's Complaint that cannot form the basis for civil liability.[4]  *See, e.g., Visnick v. Caulfield*, 73 Mass. App. Ct. 809, 813 (2009) ("Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith."); *see also id.* at 813 ("The absolute privilege which attaches to those statements protects the maker from any civil liability thereon ... To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory.").  This Court should therefore dismiss Defendants' Counterclaim in its entirety because it fails to state any claim upon which relief can be granted.

## II.   THIS COURT SHOULD GRANT CLEARPLAN'S ANTI-SLAPP SPECIAL MOTION TO DISMISS BECAUSE THE COUNTERCLAIM IS BASED ON STATEMENTS MADE IN CLEARPLAN'S COMPLAINT

"The Legislature enacted the anti-SLAPP statute to counteract SLAPP suits, defined broadly as lawsuits brought primarily to chill the valid exercise of the constitutional rights of

---

[4] Plaintiff understands from the Rule 9C conference conducted in advance of this motion that Defendants may contend there were other "public" statements made by ClearPlan to customers in the marketplace.  However, Defendants were unable to cite any specific examples of such public statements or identify the customers to whom they were purportedly made.  This represents yet another example of Defendants baldly speculating "upon information and belief" in search of a cause of action.  Nor can Defendants rely on these types of non-substantive allegations at the motion to dismiss stage in the blind hope that discovery might someday reveal the existence of a viable claim. *See, e.g., E.A. Miller, Inc. v. South Shore Bank*, 405 Mass. 95, 100 (1989) ("Litigants may be denied an opportunity for discovery if their complaints and affidavits have 'not made even a minimal showing warranting the requested discovery' ... '[D]iscovery cannot be used as a vehicle for discovering a right of action' ... Parties may not 'fish' for evidence on which to base their complaint 'in hopes of somehow finding something helpful to [their] case in the course of the discovery procedure.'").

11

freedom of speech and petition for the redress of grievances ... The main objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech." *Blanchard v. Steward Carney Hosp., Inc.*, 477 Mass. 141, 147 (2017). To forestall such suits, the anti-SLAPP statute provides that "in any case in which a party asserts that the ... counterclaims ... against said party are based on said party's exercise of its right of petition ... said party may bring a special motion to dismiss." *Gillette Co.*, 91 Mass. App. Ct. at 137 (quoting from M.G.L. ch. 231, § 59H).

A two-part test governs special motions to dismiss brought under the anti-SLAPP statute. *Id.* First, "[a]t the threshold stage, the moving party ... must demonstrate ... that each claim it challenges is based solely on its own protected petitioning activity, and that the claim has no other substantial basis." *477 Harrison Ave., LLC v. Jace Boston, LLC*, 483 Mass. 514, 518 (2019). Second, if the moving party makes that showing, the burden then shifts to the non-moving party to demonstrate that either: (1) the moving party "lacked any reasonable support or any arguable basis in law" for petitioning activity that caused "actual injury" to the non-moving party; or (2) there is "fair assurance [] that [the non-moving party's] claim is not a 'meritless' SLAPP suit 'brought primarily to chill the special movant's ... legitimate petitioning activities." *See id.* at 518-19. Defendants' Counterclaim should be dismissed under this framework because it was brought for the retaliatory purpose of chilling ClearPlan's petitioning activities and Defendants will be unable to demonstrate otherwise.

A.      The Counterclaim is Based on ClearPlan's Petitioning Activity

"Commencement of litigation is quintessential petitioning activity." *477 Harrison Ave., LLC*, 483 Mass. at 520. Here, ClearPlan engaged in that quintessential petitioning activity by filing a Complaint. Defendants responded to that Complaint by filing a Counterclaim. For the reasons set forth in Section I.A, *supra*, this Court must disregard the vague and speculative

12

allegations pled in the Counterclaim "upon information and belief." *See Gillette Co.*, 91 Mass. App. Ct. at 139 (concluding in anti-SLAPP context that allegations "added little to the analysis because the complaint was 'unverified' and 'bare-bones' and many of the allegations were made 'on information and belief.'"). Once these speculative allegations are shorn away, all that remains to Defendants' Counterclaim is the allegation that ClearPlan harmed Defendants by publicly accusing them of misappropriating confidential information. *See* Def's C'Claim, ¶ 37. However, as described in Section I.B, *supra*, that accusation was made public **in ClearPlan's Complaint**. *See* Pl's Compl., ¶¶ 39-41, 51-52, 57, 62, 67. In these circumstances, ClearPlan has met its threshold burden of demonstrating that the Counterclaim is based solely on petitioning activity – *i.e.,* Defendants are seeking redress for an accusation advanced in ClearPlan's Complaint.

Even assuming, *arguendo*, that this Court were not required to disregard the allegations made "upon information and belief," ClearPlan would still meet its burden of establishing that the Counterclaim is based solely on petitioning activity. This is because Massachusetts courts hold that "when ascertaining whether petitioning activity is the sole basis of a claim, the structure of the nonmoving party's complaint ordinarily cannot be dispositive of the matter." *Blanchard*, 477 Mass. at 155. Rather, "where [] individual acts can stand alone to support the cause of action ... they should be examined one by one" for purposes of the first prong of the special motion to dismiss analysis. *See Reichenbach v. Haydock*, 92 Mass. App. Ct. 567, 574 (2017); *see also Blanchard*, 477 Mass. at 155 ("Where, as here, the claim structured as a single count readily could have been pleaded as separate counts, a special movant can meet its threshold burden with respect to that portion of that count based on petitioning activity."). Indeed, "[w]ere it otherwise, nonmoving parties could undercut the anti-SLAPP statute and its salutatory purpose

by combining into a single count claims that are based on both petitioning and non-petitioning activity." *Blanchard*, 477 Mass. at 155.

Here, Defendants styled their Counterclaim as a shotgun pleading incorporating every one of their allegations into each of their three claims for relief. *See* Def's C'Claim, ¶¶ 42, 47, 51. These claims, however, could have readily been pled as separate counts pertaining to each instance of allegedly wrongful communications and/or public accusations detailed in the Counterclaim. *See id.*, ¶¶ 32, 35, 37. Thus, Defendants' allegation that ClearPlan publicly accused them of misappropriating confidential information through a petitioning activity, *see id.*, ¶ 37, could have been pled as the basis for separate counts of tortious interference, defamation and violation of ch. 93A. *See, e.g., Reichenbach*, 92 Mass. App. Ct. at 574 (recognizing that individual statements underlying defamation claim must be analyzed one by one). For this additional reason, ClearPlan has met its initial burden of establishing that the Counterclaim is based solely on petitioning activity with respect to at least that aspect of Defendants' claims.

B.   Defendants Will Be Unable to Establish That ClearPlan's Complaint is Frivolous or Caused Actual Injury

To avoid dismissal under the anti-SLAPP statute, Defendants must demonstrate "by a preponderance of the evidence that [ClearPlan] lacked any reasonable factual support or any arguable basis in law for its petitioning activity ... and that the moving party's acts caused 'actual injury to the responding party.'" *See, e.g., 477 Harrison Ave., LLC*, 483 Mass. at 518. Defendants will be unable to make this showing.

Indeed, Defendants have already implicitly conceded the reasonable basis for ClearPlan's Complaint by electing to answer it without first moving to dismiss. In that answer, Defendants also admitted the truth of the key factual allegations set forth in the Complaint – including, for example, that Projitz: (1) hired Joseph Moskowitz; (2) solicited and accepted business from

14

BAE; and (3) solicited employment from current ClearPlan employees.  *See* Def's Answer, ¶¶ 43, 50, 58, 64, 68.  Finally, for the reasons set forth in Section I, *supra*, Defendants cannot establish the existence of any actual injury because they have not identified (nor can they) any specific customer that has refused to do business with Projitz as a result of anything said by ClearPlan in its Complaint.  Defendants will therefore be unable to avoid dismissal under the anti-SLAPP statute on this basis.

C.     Defendants Will Be Unable to Provide This Court With Fair Assurance That Their Counterclaim Was Designed to do Anything But Chill ClearPlan's Legitimate Petitioning Activities

Defendants may also avoid dismissal by establishing with "fair assurance" that their Counterclaim "is not a 'meritless' SLAPP suit 'brought primarily to chill [ClearPlan's] legitimate petitioning activities."  *See, e.g., 477 Harrison Ave., LLC,* 483 Mass. at 518-19. Defendants cannot meet this burden here because they have demonstrated through their own words and actions that their Counterclaim was brought for the express purpose of dissuading ClearPlan from further pursuing its Complaint.

Defendants warned ClearPlan in advance of its intent to file a counterclaim unless the claims in the Complaint were resolved.  *See* McGovern Aff., ¶ 2.  In response, ClearPlan put Defendants on unequivocal notice that the information they had received from Schnairsohn (a disgruntled former employee of ClearPlan) was false, had been deemed meritless by ClearPlan's third-party security services vendor, and had been contradicted by the results of a security audit conducted by a division of the Department of Defense in March 2021.  *See id.*, at Exh. A. Instead of re-evaluating the basis for their putative claims or requesting further clarification, Defendants instead doubled down on their threats.  Specifically, Richard Moskowitz left a voicemail with ClearPlan's President for the purpose of giving him one last chance to "do the right thing" before Moskowitz went on "offense" against ClearPlan in a manner he threatened

15

would become "public knowledge." *See id.*, at Exh. B.  ClearPlan refused to back down in the face of this attempted intimidation.

The following day, Defendants filed their Counterclaim.  In that pleading, despite having been warned in advance that Schnairsohn was an untrustworthy source peddling false information, Defendants explicitly relied upon Schnairsohn's information as a basis for their claims.[5] *See* Def.'s C'Claim, ¶ 39 ("Upon information provided by ClearPlan's former human resources director and belief, ClearPlan has been obtaining and maintaining security clearances for their officers and employees based on false information regarding their need for the clearance and the projects they would be supporting.").  And Defendants (through Schnairsohn) have also followed through on their threats to make ClearPlan's litigation activities "public knowledge."

Specifically, in the weeks that have elapsed since the filing of the Counterclaim, ClearPlan's public (and customer-facing) LinkedIn page has been subjected to a barrage of false and defamatory comments posted by Schnairsohn, many of which reference this litigation.  For example:

- On December 15, 2022, Schairsohn posted the following message on ClearPlan's public LinkedIn page at least three times: "ClearPlan is the worst of the worst. They do not have 200 employees – simply not true – worst place I ever worked. Culture and morale were an issue every day – very Cult like work setting. Litigation against 3 former employees – a co-founder and 2 competition companies.  A sinking ship." *See* Affidavit of Matt Hoskins, ¶ 3 &  Exh. A.

- On December 16, 2022, Schairsohn posted the following message on ClearPlan's public LinkedIn page: "Funny how Josh [Garvey] says 'he started company' when in fact it was actually, he and Dan Moskowitz.  Instead of giving Dan his due, he fires him, increases his own pay in an effort to dilute Dans [sic] profitability and files a lawsuit against him to try and oust him completely as an owner.  Thats [sic] someone you should never work for – its a mess." *See id.* at Exh. B.

---

[5] Indeed, the allegation alluding to Schnairsohn's "information" is one of the very few operative allegations in Defendants' Counterclaim not pled on information and belief.

- On December 20, 2022, Schnairsohn posted the following message on ClearPlan's public LinkedIn page at least four times: "Waste of time and money. Worst place i ever worked.  They are currently suing a former co-founder/2 former employees and 2 competitor companies.  If you leave ClearPlan they sue. Be very careful!"  *See id.* at ¶ 3 & Exh. C.

- On December 28, 2022, Schnairsohn posted the following message on ClearPlan's public LinkedIn page: "The absolute worst place to work in the industry.  Employee morale is at an all-time low.  The firm is tied up in many lawsuits and currently suing a former co-founder and former employees for non-competition even though no non-competition docs were ever executed.  Be careful – be very careful...." *See id.* at Exh. D.

- On December 28, 2022, Schnairsohn posted the following message on ClearPlan's public LinkedIn page: "Don't be fooled by the smoke and mirrors – ClearPlan is a horrible place to work, the worst I have ever seen.  Employee morale is at an all-time low and lots of people exiting.  The CEO is currently suing his founding co-founder and 2 ex-employees for non-competition - even though they never executed any non-competition documents.  It's very simple - if you try and leave - they sue you.  Don't walk away - run...." *See id.* at Exh. E.

- On January 3, 2023, Schnairsohn posted the following message on ClearPlan's public LinkedIn page: "ClearPlan is the worst company in the industry.  Employee morale is at an all-time low and people are running for the exits.  The CEO is currently suing his co-founder, 2 ex-employees and 2 competing companies for non-competition - even though there were never any non-competition documents executed.  It's simple, if you try and leave ClearPlan, they will sue you.  Don't walk away - run...." *See id.* at Exh. F.

Faced with a Complaint they knew they had no basis to dismiss, Defendants instead attempted to strong-arm ClearPlan into abandoning its meritorious claims.  Defendants did so by filing a entirely speculative Counterclaim pled "upon information and belief" and coordinating a campaign of harassment through Schnairsohn designed to publicize ClearPlan's litigation activities to the marketplace.  This is precisely the type of unlawful behavior the anti-SLAPP statute is designed to prevent.  The Counterclaim should be dismissed for this additional reason.

17

## CONCLUSION

WHEREFORE, for the foregoing reasons, ClearPlan respectfully requests that this Court: (1) grant its Rule 12(b)(6) motion to dismiss; (2) grant its special motion to dismiss pursuant to the anti-SLAPP statute; and (3) award ClearPlan its costs and reasonable attorney's fees, including those incurred for this special motion and any related discovery matters, pursuant to M.G.L. ch. 231, § 59H.

Respectfully submitted,

CLEARPLAN, LLC,

By its attorneys,

_____

James D. Smeallie (BBO # 467380)
Benjamin M. McGovern (BBO #661611)
HOLLAND & KNIGHT LLP
10 Saint James Avenue
Boston, Massachusetts 02116
jd.smeallie@hklaw.com
benjamin.mcgovern@hklaw.com
(617) 523-2700

Dated:  January 3, 2023

18

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Massachusetts Superior Court Rule 9B, I, Benjamin M. McGovern, hereby certify that a true copy of the above document was served upon counsel to the defendants to this litigation by electronic mail on this 3rd day of January, 2023.

Benjamin M. McGovern